Herede, herede, this honorable appellate court for the Second Judicial District is now open. The Honorable Susan F. Hutchinson presiding. Please be seated. Your Honor, the first case on the block this morning is 2-21-0541. The people of the state of Illinois plaintiff's appellee, D. James B. Alise, defendant's appellant. Arguing for the appellant is Tiffany Boyd Green. Arguing for the appellee is Kristen M. Schwinn. All right, good morning everyone, and Ms. Green, you may proceed. I will say, as you're getting started, I am seeing that in this plastic. So I'm seeing it twice, and I'm going to get dizzy if I keep looking back and forth.  I'm going to pull that down a little bit so we can get you. Thank you. May it please the Court, my name is Tiffany Boyd Green, and I represent James D'Alise in this matter. As sentencing, the trial court ordered James D'Alise to pay restitution in the amount of $9,500 to Sarah Rigdon and $4,663.80 to James Wattas. However, in making these findings, the trial court never considered Mr. D'Alise's ability to pay. Did the trial court have to specify or specifically set out or question with respect to ability to pay? I mean, in other words, could he have taken into consideration the totality of the case in determining his ability to pay? He could have. He certainly could have, but it's not clear that he did because there was certainly no reference to it. And there was no repayment schedule that was set in terms of clarity for what the repayment was. Wasn't it within a specified period of time? It's not clear. What the order says is that it shall be paid in equal installments or as ordered by the court, and it shall be made in full not less than 60 days before the end of the term. But it's not clear what the term refers to. Wasn't that the term of his probation or conditional discharge? It's not clear. The court never makes a finding. The statute allows for a five-year term. So it's not clear because there were no findings on the record if the court was referring to the term of MSR, so it would be the 22 months, which the State's interpretation is, or if he had the term as allowed by the statute, which would be five years and would give him more time. If the payment is made in a specified period of time in the term, quote-unquote term, can the court extend the period for payment of restitution? Not past five years. Not past the five years, but if the court made it within the term of MSR or the term of probation or conditional discharge, they could extend it, correct? They could extend it, but it's not clear, and that's one of the things that courts really look to is, is it clear so that the defendant understands what the terms of restitution are and what the repayment schedule is? And here it's not clear. We can clear that up ourselves, can't we? You could clear that up. We can enter any order that the trial court could have ordered, correct? Correct. You could enter. With regard to the ability to pay, the trial court can look at all of the evidence, the entire record before deciding on the defendant's ability to pay, correct? There's not a lot in this record. Well, the defendant had private counsel. He did have private counsel, but we are appointed on appeal, meaning he is at this point indigent. There was no finding of indigency, though, and there was no inquiry as to his status, correct? There was not, but the court obviously determined that he did not have funds for private counsel on appeal. He was still a majority shareholder in the company, the Center for Dental Implants. There was no company left by the time that this trial took place. It had been shut down by DuPage County, and he didn't have access to it. I don't know what happened, to be honest, to the chairs, all the dental equipment that was in there. He had no access to it. Well, when he was the majority shareholder, the dentists that were employed there were doing hundreds of these procedures, correct? There's no evidence about how many procedures they were doing in the record. Well, I read the testimony of this. I believe it was Dr. Foucher. Yes. He testified that he had done hundreds of these procedures, correct? I understood that to mean in his lifetime that he had done implants. He didn't work for Mr. DeLeese for that long. It was only a few months, if I understand the record correctly. And at the time of trial, Dr. Rundle testified that he still had an ownership interest, so an ACDI. Yes, although Dr. Foucher said he still technically had an ownership interest, but it was worth nothing because there was no ACDI at the time of trial. There was no ability for anyone to access that business. It was completely shut down. And how long did the defendant operate the business, 2006 to 2018? Yes, it had been for a lengthy period of time, though I do believe at the end there were quite a bit of trouble. He had private counsel. He had private counsel. He was flying to New Mexico, Florida, Los Angeles. Los Angeles, I wasn't aware of that. There was a scheduled flight for him to fly to Los Angeles. Oh, for a family, yes. So where is any indication of indigency in that record? Well, he was semi-retired. And he was working for his family's company as a consultant? He was doing consulting for a company in New Mexico, very part-time, though. He was basically retired. He was the sole means of support for his wife, and he's 78 years old. Now he's 80, with health problems. So there's absolutely no indication that he is working very often, or he even can work at this point. If you look at some of the cases cited in the brief, courts will take into consideration what is your financial situation right now. And if they determine that it's too burdensome for the defendant, then they will impose perhaps 10 percent of his net income or something like that, rather than a set payment reschedule. Has he paid any of the restitution yet? I'm not aware of if he has or if he hasn't. I think – Was there an order of staying the payment of the restitution? There is not an order of staying the payment of restitution, although – Ordinarily – It's not clear right now what he's supposed to be doing. Ordinarily, absent a stay order, probation continues, conditional discharge continues, and all of the requirements continue unless there's a stay, correct? Yes, but in this point, there's no clear repayment schedule at all. So until the court clarifies it – Let me ask you a question. You were here on plain error review, correct? I'm sorry. You were here on plain error review? Yes, plain error. Right. So there was never a motion to clarify the restitution? There was never an order to clarify. But that's why courts will consider it under the second prong of plain error, because it does affect the integrity of the judicial proceedings, and he needs clarification. Additionally, some of the costs that were ordered to be paid by Mr. DeLees were not the result of any misconduct on his part charged in the indictment. Let's talk about that for just a minute. Sure. Are you objecting to the amount of restitution because he's unable to pay for it, or are you objecting to a payment schedule because he's unable possibly to pay? I'm objecting to the imposition of some of these costs that were incurred by Sarah Rigdon and James Wattis because they did not result from anything that happened after August 1, 2018. Okay. So I want to just be clear. You understand that the amount of restitution as restitution, we won't talk about the timing at this point. That's not subject to can you pay it. Correct. What's subject to can you pay would be a payment schedule in excess of 7 months or 6 months. Correct. All right. So you're not talking about ability to pay at this point. You're talking about whether or not the restitution at all, restitution was proper at all in light of the fact that you're of the position that he didn't incur those costs. Correct. The argument has two parts. The first is that there were procedural errors that made the order in the record deficient. And the second part is that some of the costs that were imposed are not the responsibility of Mr. DeLeese. Now, the testimony seems to indicate that during the period of time throughout his ownership and after his loss of license, he was consulting with the doctors. He was giving them information, setting fees for the surgeries. That does seem to be after a period of time when he was no longer supposed to practice dentistry. No. The evidence in the record showed that when Sarah Reagan, for example, came into the office, and I just want to point out, he was ordered to pay her $9,500. Mr. DeLeese is not contesting $5,000 of that payment, which was a check she wrote to ACDI during a period covered by the indictment. November of 2018, she wrote that check. He is not contesting that. However, when she came in in July of 2018, before the period covered by the indictment, she was paid $5,000 of that payment. So the dentists at ACDI were breaking down, they were loose, and she had had a lot of bone loss. So while the dentists at ACDI tried to fix that during the relevant time period and were not able to do so, she went elsewhere and paid for work that she needed when she walked in the door in July of 2018, before the period covered by the indictment. That is not Mr. DeLeese's responsibility under the restitution statute. Well, Dr. Foucher, I believe, said that he could not do a sinus lift and a bone graft, which were the things that she would need because of her age. She was aging and bone loss and things of that nature. He was not capable of doing that. I don't know if Dr. Rundle was or not, but certainly Dr. DeLeese did not physically do it. That we accept. But he sent her somewhere. Foucher sent her somewhere on recommendation of DeLeese, as I recall the testimony or his testimony. And he agreed that he would pay that cost. Dr. Foucher testified. Now, I want to stress it's a little unclear. It was the state's burden to present this evidence. Dr. Foucher was not there when she initially walked in in July of 2018. He didn't testify as to the scans or x-rays that she originally had. But her testimony, Dr. Foucher's testimony, indicate that when she came in, she was having problems. That's why she came back. So by the time Dr. Foucher got to the case, Dr. Weber had already tried to work on her, but he didn't testify at trial. The state didn't present his testimony. So Dr. Foucher looked and said, I can't do this. But that's why we're not contesting the $5,000 that he paid for this work. No, it's the $4,500 that she needed for the bone graft and the sinus lift, both of which are so painful. But she went and I thought her testimony was that Dr. DeLeese agreed to pay that amount. Well, first of all, that's not clear. That's her. Well, she said that. She did testify to that. Okay. But there is not any other evidence. And even if he did say that, that doesn't hold him responsible under the restitution statute. But he still owns the business at that point. The business isn't closed yet. And owning a business where dentists are doing work is an unlawful practice of dentistry. And therefore, he has that business and he recommends that she go elsewhere. How much more dentistry can we get engaged in? Well, that's why we're saying, here you go, Ms. Rigdon, take back your $5,000. You paid to have this done. Dr. Foucher can't do it. We don't know if it's because his skill set, for whatever reason, his skill set did not allow him to do that. But she needed this work. She needed bone grafting when she came in, in July of 2018. She needed to have her implants removed and replaced because they were loose. So it's as if she – if you look at what Mr. DeLeese is responsible for, it would have to show that there was some additional injury caused to her in that period of 2018 covered by an indictment, and the state just didn't present any evidence. What I would have liked to have seen is here were her x-rays when she walked in in July 2018. Here were her x-rays when she went to Wisconsin. Here's what happened in between. It's just not clear. Why does there have to be additional injury? Because he's not responsible for the replacement of those implants that broke down from 2006. When she came in, they were not functioning properly. They were falling out, and she needed to have them replaced. That is not his responsibility under the restitution statute. He did refer her, though, correct? Dr. Foucher said – and I want to be clear. Dr. Foucher said part of the reason, apart from the fact that he didn't feel comfortable doing that, was because she was driving a hundred miles round trip each time. He suggested she have the work done closer to home. Well, he could have sent her to the dentist next door. It's not where he sends her. It's the issue of, at that time, there is a ACTI or whatever the initials are. It is a practice of dentistry. Correct. Because implants are dentistry. He still is in ownership. He loses it later. He's still an owner. Foucher's still a 5% owner. The other one's a 10% or vice versa. There's still a company, and that company is practicing dentistry when they refer it out. Correct. But they're not taking her money for fixing the problems that she had when she came in. But it's also not their responsibility under the restitution statute. It must stem from criminal conduct. If they refer her elsewhere, that's not criminal conduct. Why not? They're practicing dentistry saying, we can't do this, but we think you should go someplace where you can, and we know somebody closer to your home. Because she came in needing that work from a time period when he legitimately was practicing dentistry, and the same holds true for Mr. Wattis. He had his implants put in in 2016 and 2017. They weren't working properly. He could have pursued a civil suit, and that might be the remedy, but that period of 2018 covered my sentence. You can finish your thoughts. He testified that he saw, Mr. Wattis testified that he saw the defendant at least 20 times after July 30th of 2018. That is correct. And it seems like based on the testimony, James Wattis sought him out. Mr. DeLeese didn't try to approach him. Every dentist there kept re-cementing in the work that he had done. But, again, if it's from 2016 and 2017, it's not covered by the restitution statute. If there are no further questions. Thank you. All right. Ms. Schwinn, when you're ready. Ms. Schwinn, why don't you pick up right where Ms. Green left off, talking about the necessity of him to pay restitution for something that he didn't incur the cost of. Sure. And for the record, Kristen Schwinn, on behalf of the DuPage County State Attorney, I think Justice Hutchinson was correct in pointing out that the defendant is convicted of unlicensed practice of dentistry. That means that he is operating a dental facility in violation of the law. That conviction doesn't require injury, which is what I think the defendant seems to read into the statute, such that there is some sort of injury and such that because of the injury due to the unlicensed practice of dentistry, that is where restitution is then awarded. That is not what the conviction requires, nor is that what restitution requires. Restitution is a payment made to the victim in order to make the victim whole or to pay for costs the victim incurred as a result of the defendant's actions. Well, the argument is that some of the harm to the victims actually occurred while he was still licensed to practice dentistry, and therefore that harm or those costs should not be imposed upon him. I believe the judge in this case did, at the restitution hearing, go through all the bills and find that the bills that were incurred prior to the time before the defendant lost his license were not, they found that that was not part of the restitution order. I believe at trial, Ms. Rigdon testified that, and I believe Mr. Wattis did as well, that the defendant came up with a dental plan, came up with a plan during the time of the time his license was not valid, came up with a plan as to what the dental work would be, and as a result of that plan, various dentists then executed that plan. So it's the State's position that if the dentist is practicing dentistry at that time, including coming up with the plan for the dental work, he is then, as part of the restitution, that is a cost that the victims incurred in order to, as a result of the defendant's actions. So in this case, related to Ms. Rigdon, the defendant's plan was for a sinus lift and a bone graft. It was determined that that wasn't something that that was, that they could do in that office. And Ms. Rigdon testified, credibly, because there was nothing, there was nothing, I believe, contrary in the record, that Mr. DeLeese said that he would pay for it. Go, you know, essentially, go to this dentist, bring me the bill, and I'll pay for it. That is, under the restitution definition, that is paying for costs the victim incurred as a result of the defendant's actions. Defendant, acting under the guise of a licensed dentist, came out with a plan for the dental work and said, hey, go incur this cost. And, in fact, Ms. Rigdon did. What case might you have to support your position? I did cite, well, first, we'll use the case law of the plain language of the statute, which is complete restitution and being made whole. I would also support that the plain language of the statute doesn't require a specific injury. And in this case, I will state, will admit, it is a unique case. It is unlicensed practice of dentistry, which doesn't require some sort of necessary injury that we think of like a battery. If he had been charged with theft by deception for deceiving these patients into believing that he was an actual dentist, you could have charged him with a felony and all of the money would have been subject to restitution. Exactly. Exactly. So why is this different than that? Well, the people cited the People v. Oceana case, which is a workers' compensation fraud. And I believe that this Court in that case has some very nice language as to what restitution encompasses, and that's complete restitution. And that is actions that the victims or the restitution, the victims took as a result of the defendant's, in Oceana, fraudulent statements. We would say in this case it's the result of the defendant holding himself out that he's a licensed dentist, and so therefore, you know, is able to give a dental plan, is able to have the ability to opine. You know, we don't, we're not alleging that he did work during this time. I don't think that at trial there was no testimony that we were alleging that he  He was physically working on the teeth. Correct, Your Honor. He looked at x-rays and made recommendations. Exactly. And he, without saying it, he held himself out as a dentist. He held himself out to these, to Mr. Wattis and Ms. Rigdon, that I am a licensed, that I am a, someone that can give you a dental plan. And I know, my expertise is this is what we should do. And Ms. Rigdon, on that advice, they started going through the plan. And one of that was the bone lift, excuse me, sinus lift and bone graft. So to me, that is a cost in, to me, excuse me, as the State, is a cost incurred to the victim. Similarly, with Mr. Wattis, Mr. Wattis testified that he was unhappy with the work. So even if he were thinking about some sort of injury, there is testimony in the record that he's unhappy with the work that is going on during the time period where his license was not valid. I think, I believe he testified that he was in the office in August 2018 20 times alone. That is in our brief, and I'll also just mention that's at page 198. It's 194 to 198 when Mr. Wattis discusses that. But is that necessary for restitution that he had worked before that he was unhappy with? No. That's not, that's not the, no. That's not the, you know, restitution is making the victim whole. And in this case, because the dentist is, excuse me, because the defendant is holding himself out and not practicing, or excuse me, is practicing when he is unlicensed, the dental work that he has a plan for, we would believe that the result of following that dental work plan, those are costs incurred by the victim. Talk to us, then, about his ability to pay. Sure. I The court never had a hearing on his ability to pay, never set out specifically how they knew he had the ability to pay. Sure. How could he know what he has to pay, or how is it proper? Sure. It is, it is correct that the ability to pay does not affect the actual amount of restitution. It's just the manner in which the restitute, or the plan for the restitution. The court doesn't have to discuss on the record the defendant's ability to pay. When Well, should they, all right, doesn't have to make specific findings. That's correct. I think is actually the issue, not discuss on the record. There should, shouldn't there be some indication of, I've considered that you were a dentist for 40 years, you owned this business for a period of time, you've represented yourself to be successful, notwithstanding the fact that you and your wife now have health problems, you've traveled to Texas, you've traveled to New Mexico, you're still working for a family member. Shouldn't some of that have been mentioned? I think when we look at the record on a whole, there is evidence of what the defendant has the ability to pay for. He did testify that he owns, he is consulting for a manufacturing firm. He is testifying that he is, you know, he is supporting, you know, there is testimony that he supports himself and his wife. I mean, when you look at the record, there is evidence to support the court's decision on the ability to pay. And I believe that as you look at the, when you read all the sentencing orders and the restitution orders together, the record shows that the time to pay is through the conditional discharge, you know, the 22 months of conditional discharge. I mean, if you look at the transcript, though, it sounds like the judge is saying that it has to be paid during the period of incarceration. Now, we know that's not true, correct? Correct. All right. Correct. And so counsel's position is the term could be the two years or it could be the maximum of five years. How do we find that clarified? Well, I believe when they're talking about, I believe in the court, when they talk about the term, it would be the term of the conditional discharge. And I agree that the court could have made additional, could have made its ruling clearer. Well, actually, isn't there something on the record and defendant is indeed present during that period of time, and I think maybe his wife is present during that period of time, that the court says to the state's attorney, who was upset that he was getting moved to New Mexico in the first place, well, what if he doesn't make his payments? And the court says, well, there's extra time to make the payments and you can file a PTR, I think that's what you said, and ask for additional assistance or ask for additional time. So doesn't that, in and of itself, indicate that she's not currently looking at a five-year term but a two-year term? Sure. But it's not anywhere in an order, is it? It's not. It is a, the order is a, the language is within a term and it does not specify which term. You are correct on that. It's the state's position that when you read all the orders, you know, the restitution with the criminal sentencing order together, that is the indication that it's the conditional discharge. Well, I could not find a single order that, at least I couldn't find, and I'm not good at this, but I could not find a single order that gave a whole recitation of the terms of the conditional discharge, what the sentence of 270 days was on. I know it was only on count one because I read the transcript. It's not in an order. And it's also unclear, in some ways, that he is to pay to Sarah Rigdon at an address and to James Wattis at an address. The State's attorney is to keep track of the payments because this is not reporting. And, last but not least, at the very end of that paragraph, it says all payments are to be made to the circuit court clerk. If I were the doctor, I wouldn't know where to send my payments, let alone how much to send my payments. How is this clear? And how is this taking into consideration his ability to pay and how he's going to pay? Well, I believe, excuse me, I don't think the court has to set forth the considerations it takes when determining the ability to pay. It doesn't have to be on the record. I believe that the court orders should indicate to the defendant what is needed to do in order to stay compliant with conditional discharge and with the court orders. I believe when reading them together, it would be that it shows within the conditional discharge time period. And I acknowledge that, Justice Hutchison, what you did read could be deemed potentially confusing. It seemed like the judge was confused. Well, the State's attorney should have made a comment on the record and say, this will be paid through the State's attorney's office, the restitution program, correct? Right. And I do believe that with conditional discharge, I mean, I will say that should this court be concerned about the confusion of the orders, this Court's ruling in People v. Boots states that there's an ability to do a limited remand, not for a new restitution hearing. And that's on paragraph 55. A limited remand just for the court to take into consideration ability to pay, set the timeframe for the defendant. And so that would be our, you know, should this court find that it's confusing, that would be the State's request. Not a full restitution hearing, but just for its limited remand. Or, as Justice Burkett, you did say, and the people would agree, that under, I believe, Supreme Court Rule 615, 611, that this court could. Enter any order. Enter any order. Right. And it's also clear that while there was, I think there was a separate trial attorney who tried the case, and then an attorney, Terry Slaw, came in post-trial. And while he made a motion for a new trial, he really did not make a motion that recognized or related to the restitution or the ability to pay the restitution. Correct. He did, however. No clarification. Correct. He did, however, make a motion to allow him to move to New Mexico. Okay. Correct. Correct. So that's why we would argue that this is all under plain error, because the defendant has. And you feel that it's plain error as opposed to ineffective assistance of counsel? If I may respond. Sure. There's a footnote on page 4 in our brief that we believe that people be burge of the Illinois Supreme Court case would really mean that this is an ineffectiveness that is unnecessary to get to because the plain error analysis would cover it. If there are no further questions, just for the reasons stated today in our brief, we'd ask that you affirm the court's order. Thank you. Thank you. Now, I want to be clear for the record. Is it Ms. Green or is it Ms. Toy Green? Ms. Green. Okay. I don't want to misrepresent. No. That's fine. Thank you. I want to point out just with the few questions you were just asking counsel, there actually was a motion to reconsider or modify the sentencing order filed on August 25th of 2021. And it did address restitution in that it said that the court erred in the restitution order. That's with respect to the amount. No. Nothing with respect to the amount. But he did say that it was not ordered as a work product of defendant and therefore should be void. But regardless, as this Court recognizes, it can be considered for a second point of plain error. But he didn't specifically address the ability to pay or things of that nature. Correct. It was more to your second issue probably than your first. Yes. Correct. And I do want to point out that the statute, the restitution says the court shall assess the actual out-of-pocket expenses, losses, damages, and injuries suffered by the victim named in the charge and any other victims who may also have suffered out-of-pocket expenses, losses, damages, and injuries approximately caused by the same criminal conduct of the defendant. So while counsel talked about Mr. Wattis coming in up to 20 times during that time period to have his teeth re-cemented, yes, that's unfortunate and it was a lot of time for him, but that still doesn't fall under a remedy through the restitution statute. He is not entitled. He didn't pay ACDI anything during that relevant time period. So he ultimately had to go have his work from 2016 and 17 fixed. But, again, that would be for a civil suit, not for the restitution statute. And with respect to O'Shauna, which was the case counsel referenced, I actually think that that is an example for this case because this court looked at the expenses resulting from defendant's fraudulent statement and said, yes, everything that resulted from coming from that is something that he has to pay restitution for, but excluded the security surveillance costs because that occurred before the fraudulent statement, which is what was the problem and what he was charged with. Here, there are no expenses other than that $5,000, which he agrees he should pay back. These damages and losses and injuries occurred prior to August 1st, 2018, which is the time period he was unlicensed. What do you mean? You mean the bad workmanship? The bad workmanship, exactly. If Sarah Rigdon's implants, and it may not have even been bad workmanship in her case. They were put in in 2006 and seemed to be fine for many years. As she aged, she said, I had bone loss. They weren't working anymore. So he's not responsible for all the costs to fix that. She came in with that problem before the time period covered. But he referred it. He did. He drafted the plan for both Wattis, right? Well, Wattis' plan, there was no additional plan for Wattis. He put in the implants in 2016. The dentists at ACDI for James Wattis were basically saying, here, let's try and re-cement these. Let's see if we can fix them. Do we know whether or not, but for the defendant's advice, they would have opted for dentures as opposed to new implants? They could have gone a much cheaper route, right? You know, there's not evidence. And, again, this was the State's evidence to show. Well, the evidence is that the teeth failed and the costs that were incurred were as a result of, in part, his referral. But the referral isn't. I mean, I know we're spinning our wheels here. Yes, exactly. She needed this work regardless, is my point. So what you're saying is the fact that he advised it is irrelevant. No. If it had been, I'm not. It was Dr. Foucher that advised it. And he's running the place, the defendant. According to Dr. Foucher, Mr. DeLeese was. Well, that's the evidence the judge believed. The judge explicitly said he was lying. Correct. But even so, the fact that he says, we can't do this for you, doesn't mean that she has an injury as a result of that. There would need to be evidence by the State that that was an injury, not an unnecessary procedure. And there simply was not. It was the State's burden. So for these reasons, we would ask that you remand the case for further restitution proceedings and void that portion of the order for James Wattis and Sarah Rigdon. Thank you. Thank you. Well, thank you, counsel, for your argument today and for your travel, Ms. Green. We appreciate a different type of case than we're used to. And we will take the matter under advisement and issue a decision in due course.